**NORWEST BANK NORTH DAKOTA, N.A., as trustee of the Sonya Lotzer Trust**

v.

**David S. DOTH, in his official capacity as Commissioner of the Minnesota Department of Human Services.**

**NORWEST BANK NORTH DAKOTA, N.A., as trustee of the Bobbi Lerud Trust**

v.

**David S. DOTH, in his official capacity as Commissioner of the Minnesota Department of Human Services**

Nos. 4–96–CV–1054, 4–96–CV–1095.

United States District Court,
D. Minnesota,
Fourth Division.

June 30, 1997.

James E. Nicolai, McLarnan Hannaher Vaa Skatvold & McLarnan, Moorehead, MN, for Plaintiff.

Allison Marie Dibley, MN Atty. General, St. Paul, MN, for Defendant.

## ORDER

ROSENBAUM, District Judge.

The background facts in these consolidated cases are complex; the question they present is simple: May a recipient of Medicaid funds avoid a statutory and contractual obligation to reimburse Medicaid by placing into trust proceeds from a personal injury action? The answer to the question is "no".

### I. *Background*

Sonya Lotzer and Bobbi Lerud were injured in separate, unrelated automobile accidents. Ms. Lotzer was injured in 1995 and Ms. Lerud in 1993. The accidents left each woman disabled, as defined by federal law. Neither Lotzer nor Lerud could afford her ensuing medical expenses. Each turned to the Social Security Administration's ("SSA") Medicaid program for help. In each instance, Minnesota's Department of Human Services ("DHS"), the state agency that distributes Medicaid funds, paid for their medical care.

As a condition of receiving these payments, Lotzer and Lerud assigned to the DHS their rights to medical payments made under automobile or health care insurance policies. In addition, each agreed to cooperate with the State in any legal action brought against third parties to recover medical expenses. In furtherance of these agreements, the DHS filed medical assistance liens against any of Lotzer's or Lerud's causes of action accruing as a result of their accidents, pursuant to Minn.Stat. § 256B.042. The Lotzer lien, filed June 12, 1996, amounts to $66,797.49, and the

Lerud lien, filed October 7, 1994, amounts to $54,678.24.

Lawsuits stemming from these accidents were filed on behalf of Lotzer and Lerud, and each case has been settled. The Lotzer settlement proceeds are expected to total $110,000, and the Lerud settlement proceeds are expected to total $140,000. Lotzer and Lerud now seek, through plaintiff, Norwest Bank North Dakota, N.A. ("Norwest"), to place these settlement proceeds into a supplemental needs trust ("SNT"). In October, 1996, approximately two years after the DHS secured its liens, an SNT was established on each woman's behalf. The SNTs were created pursuant to a 1993 amendment to the Social Security Act, which allows certain Medicaid recipients to place assets in SNTs without affecting the recipients, eligibility for Medicaid benefits.

Norwest appears here as trustee of Lotzer's and Lerud's SNTs. Norwest seeks declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202, and asks this Court to allow Lotzer and Lerud to avoid the above-described DHS liens. Norwest claims the 1993 amendment authorizing SNTs allows Lotzer and Lerud, the SNT beneficiaries, to place into the trusts funds on which the State has imposed a prior medical assistance lien. Norwest further argues that placing such funds into an SNT defers payment of the State lien until the trust beneficiary's death. Defendant, David S. Doth, Minnesota's Commissioner of the Department of Human Services, counters that the State's lien must be satisfied prior to placing a Medicaid recipient's funds in trust.

Defendant moves to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."). Plaintiff cross-moves for summary judgment, pursuant to Fed.R.Civ.P. 56. All parties agree that there are no disputed facts and that the case raises purely legal issues proper for summary resolution.

## II. *Discussion*

The Social Security Act, 42 U.S.C. §§ 1396–1396v, governs Medicaid, a medical assistance program jointly financed by federal and state governments. Under the Act, states must require medical assistance payment recipients to assign to the donor–state any rights they have to reimbursement for medical care from any third parties. *See id.* § 1396k. In addition, states, themselves, must seek reimbursement from legally liable third parties for medical assistance funds they have advanced. *See id.* § 1396a(a)(25)(I).

The Minnesota legislature has passed laws to implement these Social Security Act requirements. *See* Minn.Stat. § 256B.042. Minnesota law confers a lien in favor of the DHS against any Medicaid recipient's cause of action that occurs "as a result of injuries that necessitated the medical care." *Id.* § 256B.042, subd. 1.[1]

In 1993, Congress amended the Social Security Act. These amendments defined the status of assets held in trust for a Medicaid recipient and the effect of such assets on the trust beneficiary's eligibility for medical assistance payments. *See* 42 U.S.C. § 1396p(d). When it amended § 1396p(d), Congress defined the corpus of revocable trusts and any payments from irrevocable trusts as income to the trust beneficiary. These sums may, therefore, disqualify the trust beneficiary from receiving Medicaid assistance. *Id.* § 1396p(d)(3)(A)—(B). But, the amendments to section 1396p(d)(3), by their terms, do not apply to SNTs. *Id.* § 1396p(d)(4)(A).[2] As such, when assessing

---

1. When such a cause of action results in a settlement, judgment, or award, attorneys' fees are deducted first. The DHS lien is satisfied second, and the remainder is paid to the Medicaid recipient. But in all cases, this distribution scheme is subject to the statute's overarching requirement that the Medicaid recipient "must receive at least one–third of the net recovery after attorney fees and other collection costs." Minn.Stat. § 256B.042, subd. 5.

2. Specifically, under the 1993 amendment, section 1396p(d) shall not apply to a
   > trust containing the assets of an individual under age 65 who is disabled ... and which is established for the benefit of such individual ... if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.

an individual's eligibility for Medicaid, the state may not count assets held in an SNT as income. In other words, under the 1993 amendments, a disabled individual may place assets in an SNT without being disqualified from receiving Medicaid. This amendment applies to Medicaid payments made on or after October 1, 1993. *See* P.L. 103–66, § 13611(e), 107 Stat. 627.

■ Norwest argues that the 1993 amendments allow an individual to fund an SNT with accident recovery proceeds before satisfying a previously placed state medical assistance lien. This argument rests, in large part, on the clause establishing the amendment's effective date, which provides: "The amendments made by this section shall apply, except as provided in this subsection, to payments under Title XIX of the Social Security Act for calendar quarters beginning on or after October 1, 1993...." P.L. 103–66, § 13611(e), 107 Stat. 627. Norwest argues that this clause bars a state from seeking immediate reimbursement from Medicaid recipients who are beneficiaries of an SNT for any Medicaid payments advanced on or after October 1, 1993. The Court declines to adopt such an aberrant reading.

It is axiomatic that a court must give effect to a statute's clear meaning. *Norfolk & Western Ry. Co. v. American Train Dispatchers' Ass'n*, 499 U.S. 117, 111 S.Ct. 1156, 113 L.Ed.2d 95 (1991); *Arkansas AFL–CIO v. FCC*, 11 F.3d 1430, 1440 (8th Cir.1993) (en banc). Congress was clear when it drafted the 1993 amendments to § 1396p(d).

In the 1993 amendments, Congress explicitly addressed only the narrow issue of the attribution of trust funds in determining a trust recipient's Medicaid eligibility. In the first line of the amended subsection, Congress states, *"For the purposes of determin-* *ing an individual's eligibility for ... benefits under a State [Medicaid] plan ... the rules specified [herein] shall apply to a trust established by such individual."* 42 U.S.C. § 1396p(d)(1) (emphasis added). The Court finds this language clear—Congress only addressed the proper calculation of an individual's Medicaid eligibility.

The amendment's reference to Medicaid payments made on or after October 1, 1993, does not alter this analysis. Contrary to Norwest's assertion, the effective–date language does not bar the State from seeking reimbursement from legally liable third parties for Medicaid payments made after October 1, 1993. Rather, the language to which Norwest alludes indicates only that the State may not consider assets held in an SNT in determining an individual's Medicaid payment eligibility on or after October 1, 1993.

Were the Court to accept Norwest's position, a Medicaid recipient who secures a judgment or settlement could evade an existing state lien simply by placing his or her award in an SNT. This is, of course, what the SNT beneficiaries are attempting to do here. Such a reading, however, would eviscerate Congress's clearly expressed intention that these funds be repaid. *See* 42 U.S.C. § 1396k. This reading would also negate the Social Security Act's comprehensive scheme permitting the states to place these liens. *See, e.g., Cricchio v. Pennisi*, 90 N.Y.2d 296, 307, 660 N.Y.S.2d 679, 683, 683 N.E.2d 301, —— (N.Y.1997) ("As a practical matter, the statutory assignment and lien provisions would be rendered meaningless if they remained unenforceable until the recipient's death.").[3] The Court finds Congress did not intend such a result.

---

42 U.S.C. § 1396p(d)(4)(A).

**3.** Prior to *Cricchio*, New York's lower courts held—as plaintiffs wish to do here—that a Medicaid recipient need not satisfy a state lien before funding an SNT with the proceeds of a personal injury cause of action. *See Link v. Town of Smithtown*, 226 A.D.2d 351, 640 N.Y.S.2d 768 (N.Y.App.Div.1996), *rev'd*, Nos. 31–32, 1997 WL 138005 (N.Y. Mar. 25, 1997); *Cricchio v. Pennisi*, 220 A.D.2d 100, 640 N.Y.S.2d 573 (N.Y.App.Div. 1996), *rev'd*, 90 N.Y.2d 296, 660 N.Y.S.2d 679, 683 N.E.2d 301 (N.Y.1997); *Samerson v. Mather Mem. Hosp.*, 166 Misc.2d 228, 632 N.Y.S.2d 948 (N.Y.Sup.Ct.1995), *aff'd*, 652 N.Y.S.2d 103 (N.Y.App.Div.1997); *Rosado v. Perez*, 648 N.Y.S.2d 938 (N.Y.App.Div.1996). In March, 1997, the New York Court of Appeals reversed *Link* and *Cricchio*. *See Cricchio*, 660 N.Y.S.2d at 684, 683 N.E.2d at ——.

The 1993 amendments neither explicitly overrule nor do they even reference the Social Security Act's state lien provisions. These omissions are crucial; it is an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative." *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979).

The Court rejects Norwest's next argument that, to the extent the reimbursement provisions conflict with the 1993 amendments, the reimbursement language must be disregarded. The argument fails because the Court finds no conflict between the 1993 amendments and the provisions permitting states to collect Medicaid payments from legally liable third parties. The legislative history surrounding the 1993 amendment, authorizing the favorable treatment of SNTs,

> reveals that the amendments were prompted by the sole desire *to encourage families to undertake long-term financial planning for loved-ones with family assets* that were not otherwise earmarked "to reimburse government assistance."

*Cricchio,* 660 N.Y.S.2d at 683, 683 N.E.2d at —— (quoting Bill Jacket, L.1993, c. 433, Mem. in Support) (emphasis added). This history demonstrates Congress's intent to avoid a conflict between the 1993 amendments and the Social Security Act's reimbursement provisions.

■ The Court also observes that Norwest's reading of the 1993 amendments would nullify the Social Security Act's provisions requiring Medicaid recipients to assign their rights to payment for medical care from any third parties to the donor state. *See* 42 U.S.C. § 1396k. Under this section, a Medicaid recipient is, essentially, an agent of the state for the purpose of reimbursing the Medicaid fund. As such, a Medicaid recipient's payments from a third party do not truly belong to the Medicaid recipient. *See Cricchio,* 660 N.Y.S.2d at 683, 683 N.E.2d at —— ("[Plaintiffs' argument] fails to appreciate th[e] critical distinction between the assets of a responsible third-party and assets belonging to the Medicaid recipient."). Instead, these third-party payments are already dedicated to the Medicaid fund. Under this analysis, Norwest's argument must fail; it is elementary trust law that an individual cannot fund a trust with assets he or she does not own.

Finally, Norwest's argument neglects the contractual relationship between Medicaid recipients and the DHS. To obtain Medicaid funds, the recipient must sign an agreement promising to repay the funds as provided by law. Based on this agreement, the State advances to the Medicaid recipient his or her medical expenses. This is a bilateral contract, under which the State first advances full consideration. A recipient's failure to repay the State from collected funds plainly breaches the contract. This is a breach the Court cannot countenance through a strained reading of a statutory amendment clearly not intended for such a purpose.

### III. *Conclusion*

For the reasons set forth above, and based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Plaintiff's motion for summary judgment is denied.

2. Defendant's motion to dismiss is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.