Brian SULLIVAN, Plaintiff,

v.

COUNTY OF SUFFOLK, Suffolk County Police Department, John Cahill and Renee Buschor, Defendants.

No. 95–CV–1533 (JS).

United States District Court, E.D. New York.

April 30, 1998.

Roger Kunkis, Bauman Kunkis & Cavera, P.C., New York City, for Plaintiff.

W. Scott Schneider, Robert Cimino, Suffolk County Atty., Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Plaintiff Brian Sullivan brings this § 1983 action against defendants County of Suffolk, Suffolk County Police Department, Police Officer John Cahill and Police Officer Renee Buschor after defendant Cahill shot Sullivan, who was unarmed, in the back as Sullivan fled from the officers. As a result of this incident, the plaintiff was rendered a quadriplegic and will require a lifetime of medical assistance.

In January 1997, the parties agreed before Magistrate Judge Michael Orenstein to settle the action for a confidential amount, provided that the Suffolk County Department of Social Services ("DSS") was placed on notice that a supplemental needs trust would be created to hold the settlement assets and to provide for the plaintiff's necessities throughout his life. At the time the settlement of this action was reached, the DSS held a Medicaid lien filed pursuant to New York Social Services Law § 104–b in the amount of $555,959.26 for plaintiff's medical assistance since his injury.

On March 11, 1997, plaintiff's counsel sent a proposed order settling the action and a draft supplemental needs trust. The defendants' willingness to agree to the trust then changed in light of the March 25, 1997 decision of the New York State Court of Appeals in *Cricchio v. Pennisi*, 90 N.Y.2d 296, 683 N.E.2d 301, 660 N.Y.S.2d 679 (1997), which altered the ability of settling parties to create supplemental needs trusts without prepayment of any outstanding Medicaid liens. The decision of the Court of Appeals affected certain language in the proposed order and the supplemental needs trust, which provided that such payment of liens would not be made until the death of the beneficiary, Brian Sullivan.

Because of the decision in *Cricchio*, the parties and the DSS entered into a stipulation, so ordered by the Court on July 9, 1997, agreeing that the Medicaid lien would be reduced and compromised to the amount of $200,000. The entire settlement amount would be placed in an interest bearing escrow account. From this account, all but the $200,000 would be transferred to provide the assets to the supplemental needs trust and to pay plaintiff's counsel for his legal fees and disbursements. The stipulation further provided that the $200,000 would remain in escrow pending this Court's determination as to whether the lien must be satisfied for $200,000 prior to the establishment of the supplemental needs trust or whether reimbursement to the DSS for medical assistance benefits provided prior to the settlement be deferred until the death of the plaintiff. If the Court renders a decision favorable to the Department of Social Services, the parties agreed that the $200,000 would be paid to DSS to satisfy the Medicaid lien. The parties have fully briefed these legal issues.

## DISCUSSION

■ Under New York's Estates, Powers and Trust Law § 7–1.12, a "supplemental needs trust" is a discretionary trust established for the benefit of a person with a severe or persistent disability. N.Y. Est. Powers & Trusts L. (the "EPTL") § 7–1.12(a)(5) (McKinney Supp.1998). The purpose of such a trust is to provide a supplemental source of income for the disabled to cover expenses not already covered by government assistance programs, such as Medicaid. *See id.* § 7–1.12(a)(5)(i). As such, the

trust may not provide for the payment of items that are concurrently being paid for by other government programs, with the few exceptions for necessary food, clothing and shelter items. *See id.* § 7–1.12(a)(5)(ii). Section 7–1.12(b)(3) further provides that neither principal nor income of the trust are to be considered the beneficiary's resource for purposes of other government programs until an actual distribution is made. The State is entitled, however, to recoup amounts of all public assistance from the trust assets remaining upon the beneficiary's death. N.Y.Soc.Serv.L. § 366(2)(b)(2)(iii) (McKinney Supp.1998).

In this case, the Court faces the situation where the supplemental needs trust is to be created out of the settlement proceeds from the incident giving rise to the disability. The question has arisen, however, as to whether any outstanding Medicaid liens placed pursuant New York Social Services Law § 104–b have to be satisfied prior to transferring the settlement funds to the trust. Assuming that such satisfaction is not required, the parties to this action previously agreed to a deferred payment of the lien until the death of the plaintiff/beneficiary. After filing the proposed supplemental needs trust, such practice was expressly rejected in *Cricchio v. Pennisi,* 90 N.Y.2d 296, 683 N.E.2d 301, 660 N.Y.S.2d 679 (1997).

In *Cricchio,* the New York Court of Appeals determined that any outstanding Medicaid liens had to be repaid from settlement funds prior to the creation of a supplemental needs trust. Because Medicaid is a jointly funded federal and state medical assistance program, the court examined both federal and state laws regarding the power of the state agency administering Medicaid to recoup sums from third-parties owing some legal responsibility to pay for the medical assistance furnished under the state plan. *Id.* at 305, 683 N.E.2d at 303, 660 N.Y.S.2d at 681. As part of this scheme, federal and state law require Medicaid applicants to assign to the state agency their rights to seek reimbursement and collect from third-parties up to the amount of the medical assistance paid. *See id.* (citing 42 U.S.C. § 1396k[a][1][A]; 42 C.F.R. § 433.146[c];

N.Y.Soc.Serv.L. § 366[4][h][1]; 18 N.Y.C.R.R. § 360–7.4[a][6] ).

▇▇▇ One of DSS' powers in seeking this recoupment is the ability under Social Services Law § 104–b to place a lien for public assistance on personal injury claims and suits against third parties to the extent of the expenditures made on the recipient's behalf. *See id.* at 306, 683 N.E.2d at 304, 660 N.Y.S.2d at 682. This lien may attach not only to any verdict, judgment or award, but to the proceeds of the settlement of any such action. *See id.* Moreover, notwithstanding the provision in § 369(2) of the Social Service Law providing that a Medicaid lien may not be imposed on the property of the recipient prior to his death, this section exempts recoveries under § 104–b's lien provisions on settlement funds. *See id.* at 306, 683 N.E.2d at 304, 660 N.Y.S.2d at 682. The court further found that these state laws are consistent with the congressional scheme whereby states are to collect funds from responsible third parties, satisfy the balance of medical assistance expenses and then transfer the remainder to the recipient. *See id.* at 307, 683 N.E.2d at 304, 660 N.Y.S.2d at 682.

Based on the statutory scheme and Medicaid's role as a "payor of last resort," the Court of Appeals in *Cricchio* found that any Medicaid lien imposed under § 104–b had to be satisfied before the settlement funds could be transferred into a supplemental needs trust. In examining a similar scheme under Minnesota law, the district court for district of Minnesota reached the same conclusion. *See Norwest Bank North Dakota, N.A. v. Doth,* 969 F.Supp. 532, 534 (D.Minn.1997). The Court is not aware of any other decisions addressing this issue at this time.

In this case, the plaintiff argues that the federal supplemental needs trust provisions should be interpreted to require that the payback of the Medicaid lien be made upon his death. Plaintiff draws the substance of this argument from a section of the Medicaid Act, 42 U.S.C. § 1396p(d)(4)(A), which provides that trust assets are not considered available resources in computing eligibility for Medicaid. In addition, plaintiff points out that no Medicaid lien may attach to the recipient's property prior his death. *See* 42

U.S.C. § 1396p(a)(1); N.Y.Soc.Serv.L. § 369(2)(a). Rather, under the federal scheme, upon the death of the disabled individual, the remainder of the trust would revert to the state to pay off any past medical assistance paid for under Medicaid. 42 U.S.C. § 1396p(d)(4)(A). Plaintiff argues, therefore, that the plain meaning of this statute requires that any claim by the State be deferred until the death of the recipient and the federal statute does not provide for any reimbursement to the State prior to the creation of the trust fund. Thus, plaintiff argues that the statute requires that a total lifetime of medical assistance be reimbursed only once upon plaintiff's death.

■ The Court rejects these arguments for substantially the same reasons they were rejected in *Cricchio* and *Doth*. First, § 1396p(d)(4)(A) refers to the *eligibility* for Medicaid and provides that eligibility will not be affected by the existence of a supplemental needs trust. *Doth*, 969 F.Supp. at 534. As noted in *Doth*, plaintiff's reading of § 1396p(d) would allow the Medicaid recipient to circumvent the lien law by placing settlement awards in a supplemental needs trust. *Id.* In addition, § 1396p(d)'s eligibility requirement is consistent with the legislative purposes of the state statute creating supplemental needs trust. *See* N.Y.E.P.T.L. § 7–1.12 (purpose of trust is to supplement rather than supplant funds available from government programs). Nothing in the eligibility requirements for Medicaid precludes the state from pursuing its obligations to recoup from third parties the amount of the Medicaid lien prior to the transfer of the funds to the plaintiff for the creation of a supplemental needs trust.

■ Second, although both federal and state law bar the imposition of a Medicaid lien on the recipient's property before his death, the federal and state laws do not suggest that settlement proceeds become the property of the recipient before they are placed in trust. Rather, the recipient has assigned his right to collect on his claim against the third party to the DSS to the extent of his medical assistance. *See* 42 U.S.C. § 1396k. As such, Social Services Law § 369(2)(c) specifically states that noth-

ing in the limitation against liens imposed prior to the recipient's death "shall be construed to alter or affect the right of a social services official to recover the cost of medical assistance provided to an injured person in accordance with the provisions of section one hundred four–b of this chapter." As noted in *Cricchio*, such a reading is consistent with the provisions of 42 U.S.C. § 1396k requiring states to retain any amounts collected as assignee of the recipient "as is necessary to reimburse for medical assistance benefits made on behalf of an individual with respect to whom such assignment was executed." *Cricchio*, 90 N.Y.2d at 306–307, 683 N.E.2d at 304, 660 N.Y.S.2d at 682.

■ Plaintiff also argues that deferring payback of the lien until plaintiff's death will not alter the duty of the states to pursue their subrogation rights for outstanding Medicaid expenses. Rather, the establishment of trust funds only alters the *timing* of the reimbursement. When it comes to seeking reimbursement for past medical assistance from third parties, however, the statutory scheme suggests that timing is everything. There is no dispute that Medicaid is intended at all times to be the "payor of last resort." *Cricchio*, 90 N.Y.2d at 305, 683 N.E.2d at 303, 660 N.Y.S.2d at 681 (citations omitted). In addition, the Court cannot escape the reality that "DSS is obligated to use public funds, which are not unlimited, to meet the needs of all aid recipients. It is charged with responsibility 'to eliminate or reduce the need for public assistance, rehabilitate the client and conserve public funds through assignment and recovery.'" *Hoke v. Ortiz*, 83 N.Y.2d 323, 330, 632 N.E.2d 861, 864, 610 N.Y.S.2d 455, 458 (1994) (citing 18 N.Y.C.R.R. § 352.23[a] ). To be consistent with this responsibility and act on it, DSS must be able to pursue the statutory recoupment procedures made available to it under state and federal law.

■ Plaintiff's remaining arguments bear little discussion. First, the Court rejects plaintiff's argument DSS cannot pursue its claim against Suffolk County as the defendant in this action because the County is not a third party, but is somehow the same as

the DSS. The Suffolk County DSS is a division of the state DSS charged with the administration of public assistance in Suffolk County and is provided with reimbursement from the state for expenditures in providing medical assistance to the needy. N.Y.Soc. Serv.L. §§ 61, 368–a. Suffolk County, on the other hand, is sued in this case its capacity as the party responsible for the actions of officers Buschor and Cahill and therefore a third party for these purposes. Second, the Court rejects plaintiff's argument that because the County denied liability as part of the settlement, it cannot be deemed a legally responsible third party. Section 104–b of the Social Services law specifically provides that Medicaid liens will attach to settlements, which almost always entail a denial of liability on the part of the defendant. Plaintiff's argument would effectively delete settlements from the purview of § 104–b. Third, the Court need not reach plaintiff's myriad arguments with respect to agency interpretations of the statutes at issue.

As a final matter, the plaintiff requests an allocation hearing to determine the amount of the settlement attributable to past medical expenses. The *Cricchio* decision originally stated that the lower courts must "allocate that portion of the recovery that is intended to compensate each plaintiff for past medical expenses and from that amount determine the sum owed to the public welfare official to satisfy the lien." That language, however, was deleted from the opinion and the Court of Appeals directed the lower court on remand to consider whether such an allocation is required. The Supreme Court, on remand, then determined that all of the proceeds of the settlement agreement are available to satisfy the DSS lien to recoup the Medicaid assistance afforded to plaintiff, regardless of allocation, because the DSS under its assignment and subrogation rights must satisfy the entire Medicaid lien and then transfer the remainder to the recipient. *Link v. Town of Smithtown*, 175 Misc.2d 238, 670 N.Y.S.2d 692, 693 (Sup.Ct.Suffolk County 1997). The Court need not pass on this issue, however, because the parties have stipulated that should the Court determine as it has that the lien must be paid now, then the

$200,000 held in escrow will be released to the DSS in full satisfaction of the lien.

CONCLUSION

For the foregoing reasons, the Court concludes that the DSS' Medicaid lien in the amount of $200,000 as stipulated by the parties must be paid before the settlement proceeds can be transferred to the supplemental needs trust. Accordingly, having rendered a decision in favor of the DSS, the parties are directed to comply with the terms of the July 9, 1997 stipulation. The parties retain the right to re-open this case for purposes of securing compliance with the stipulation. The Clerk of the Court is directed to mark this case as closed.

SO ORDERED.