# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3113

_____

| | | |
|---|---|---|
| NORWEST BANK NORTH DAKOTA, N.A., AS TRUSTEE OF THE SONYA LOTZER TRUST AND THE BOBBI LERUD TRUST | * * * * * | |
| Appellant, | * * | |
| | * * * | Appeal from the United States District Court for the District of Minnesota. |
| v. | * * | |
| DAVID S. DOTH, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MINNESOTA DEPARTMENT OF HUMAN SERVICES | * * * * * * | |
| Appellee. | * * * * | |
| _____ | * | |
| THE NATIONAL ACADEMY OF ELDER LAW ATTORNEYS, | * * * | |
| Amicus Curiae. | * | |

_____

Submitted: March 9, 1998
Filed: July 31, 1998

_____

Before BEAM and HEANEY, Circuit Judges, and WATERS,[1] District Judge.
_____

WATERS, District Judge.

Norwest Bank North Dakota, N.A. (Norwest) appeals from the district court's[2] decision that the Minnesota Department of Human Services (DHS) is entitled to satisfaction of its existing Medicaid assistance liens prior to, or at the time of, the creation of a supplemental or special needs trust pursuant to the 1993 amendments to the Medicaid Act, 42 U.S.C.A. § 1396p(d)(4)(A) (Supp. 1998). The sole question before the lower court was the timing of the payment of the lien. Norwest argues that, when a special needs trust is created, repayment for any Medicaid assistance provided by the state after October 1, 1993, comes only from funds remaining in the trust upon the beneficiary's death. We disagree and affirm.

I.

In 1993 the Medicaid Act was amended to provide for the creation of supplemental or special needs trusts (SNT). 42 U.S.C.A. § 1396p(d)(4)(A). This section provides that disabled persons under the age of 65 remain eligible for ongoing Medicaid assistance (MA) in spite of funds or other property held in an SNT, and can use SNT funds as a supplement to enhance the quality of their lives. The disabled person remains eligible for MA so long as the SNT contains a pay-back trust provision, i.e., a provision specifying that the total MA provided on or after October 1, 1993, will

_____

[1]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas, sitting by designation.

[2]The Honorable James Rosenbaum, United States District Judge for the District of Minnesota.

be paid back to the state after the beneficiaries' death from any funds remaining in the trust.

Norwest is the trustee of two SNTs created pursuant to the provisions of 42 U.S.C.A. § 1396p(d)(4)(A).  The beneficiaries of the trusts are Sonya Lotzer and Bobbi Lerud.  Sonya Lotzer (Lotzer) received serious and disabling organic brain injuries as a passenger in a car accident on October 8, 1995.  Bobbi Lerud (Lerud)  received serious and disabling paraplegic injuries as a passenger in a car accident on September 25, 1993.

To pay the ensuing medical expenses,  both Lotzer and Lerud sought assistance under the Social Security Administration's Medicaid program.  The DHS is the state agency charged with administering the Medicaid program.   Medical assistance payments were made on behalf of both women under the Medicaid program.   In applying for medical assistance, each woman was required to assign to the State of Minnesota "any medical care payments that I have a right to under automobile or health care insurance."  Joint Appendix at 93 & 99 .  Each also agreed to "cooperate with the state in any legal action brought against a third party for payment of medical expenses." Id.    With the exception of five day's care provided to Lerud between September 25 and 30, 1993, all MA provided to both trust beneficiaries was furnished on or after October 1, 1993.

Claims were filed against certain tortfeasors as a result of both accidents.   Both cases were settled for the maximum amount of insurance available, $110,000 in Lotzer's case and $140,000 in Lerud's case.  The DHS pursuant to 42 U.S.C.A. §§ 1396a(a)(25)(I) & 1396k and Minnesota  Statutes Annotated § 256B.042 (West 1992), the state statute implementing the federal statutes,  placed liens on the tort claims.  At the time of the settlement, the DHS's liens equaled approximately $72,000 and $56,000, respectively.

As noted above, both Lotzer and Lerud created SNTs pursuant to 42 U.S.C.A. § 1396p(d)(4)(A) for the placement of their settlement funds. The creation of the trusts was approved by Minnesota state district court orders. While the settlements were being negotiated, Lotzer and Lerud, through their counsel, contacted the DHS. Lotzer and Lerud took the position that 42 U.S.C.A. § 1396p(d)(4)(A) required the repayment of the existing liens to be deferred until their deaths for all MA furnished on or after October 1, 1993.[3] The DHS disagreed.

The parties stipulated that all settlement funds would be placed in the SNTs and held by Norwest, as trustee, until the issue of the repayment of the existing liens could be resolved. Norwest then brought declaratory judgment actions in Minnesota federal district court on behalf of each trust beneficiary. The two cases were consolidated. On

---

[3]The National Academy of Elder Law Attorneys (NAELA), amicus curiae, is a nonprofit national organization that consists of 3300 attorneys from all 50 states who represent aged and disabled persons and their families. The organization was established in 1988 and is based in Tucson, Arizona.

After the passage of the 1993 amendments, NAELA states it began helping individuals set up SNTs. Because the Department of Health and Human Services had not promulgated federal regulations concerning SNTs, it asserts different standards were applied by the states as to the issue of payment of a Medicaid lien prior to the establishment of an SNT. What evolved according to NAELA were cases applying three separate scenarios: (1) a priority lien payment of all Medicaid provided prior to the establishment of an SNT; (2) an allocation of a portion of the settlement to pay Medicaid prior to the establishment of an SNT; and (3) a total deferral of the lien until the death of the SNT beneficiaries.

One NAELA member, Patricia Harrison, sought a clarification regarding the prior lien issue when the Medicaid lien was greater than the tort settlement. On September 9, 1996, Acting Medicaid Bureau Director Steve Mc Adoo by letter advised Harrison that in her case the state agency had a priority lien in the settlement. NAELA asserts that Mc Adoo letter became the federal government's policy position in all 50 states.

June 30, 1997, the district court held that repayment of the existing liens should not be deferred.  See Norwest Bank North Dakota, N.A. v. Doth, 969 F. Supp. 532 (D. Minn. 1997).  The district court noted that, in the amendments, Congress addressed only the proper calculation of an individual's Medicaid eligibility and left, unaltered, the Social Security Act's comprehensive scheme permitting the states to require assignment of the MA recipient's right to payment for medical care from third parties.  This appeal followed.

II.

Medicaid is a jointly financed federal-state program established under Title XIX of the Social Security Act, 42 U.S.C.A. §§ 1396-1396v.  Medicaid pays for necessary medical care to certain needy individuals who do not have enough income or other resources to pay for the medical care they need.  States choosing to participate in the Medicaid program must comply with the requirements set forth in the Medicaid Act and in regulations promulgated by the United States Secretary of Health and Human Services through the Health Care Financing Administration (HCFA) which administers Medicaid.  Among other things, the states must submit for HCFA's approval a state Medicaid plan.  See generally 42 U.S.C.A. § 1396a(a).

In 1993, Congress passed the Omnibus Budget Reconciliation Act of 1993, amending section 1917 of the Social Security Act, 42 U.S.C.A.  § 1396p.   The amendments allow disabled individuals under the age of 65 to create SNTs which will not disqualify them from receiving Medicaid.

Specifically, the SNT amendments, codified at, 42 U.S.C.A. § 1396p(d)(4)(A) (Supp. 1998) provide as follows:

> (d) **Treatment of trust amounts.**  (1) For purposes of determining an individual's eligibility for, or amount of, benefits under a State plan under

this title [42 U.S.C. §§ 1386 *et seq.*], subject to paragraph (4), the rules specified in paragraph (3) shall apply to a trust established by such individual.

(4) This subsection shall not apply to any of the following trusts:

> (A) A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1614(a)(3) [42 U.S.C.S. § 1382c(a)(3)]) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this title [42 U.S.C.S. §§ 1396 *et seq.*].

Thus, funds in an SNT are not deemed to be available to an MA applicant or recipient for the purpose of determining MA eligibility or the amount of benefits. Nothing in the statute requires the trustee to preserve the State's interest in the trust corpus.

With respect to the effective date, the law provides: "[t]he amendments made by this section shall apply, except as provided in this subsection, to payments under title XIX of the Social Security Act for calendar quarters beginning on or after October 1, 1993, without regard to whether or not final regulations to carry out such amendments have been promulgated by such date." Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103-66, § 13611(e), 107 Stat. 627 (1993). The law also provided that the amendments shall not apply: (A) to medical assistance provided for services furnished before October 1, 1993; (B) with respect to assets disposed of on or before the date of the enactment of this Act; or (C) with respect to trusts established on or before the date of the enactment of this Act. Id.

States are directed by 42 U.S.C.A. § 1396k to require Medicaid recipients to assign to the State any rights the recipients may have to payment of medical care from third parties. Section 1396k provides in relevant part as follows:

> (a) For the purposes of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this title [42 U.S.C.S. §§ 1396 *et seq.*], a State plan for medical assistance shall–
>
> > (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required–
> >
> > (A) to assign the State any rights, of the individual . . . to payment for medical care from any third party.

42 U.S.C.A. § 1396k(a)(1)(A) (1992). The individual receiving the assistance also has the duty to "cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan . . . ." 42 U.S.C.A. § 1396k(a)(1)(C). Federal law also requires states to recover certain MA payments from MA recipients' estates after their deaths. 42 U.S.C.A. §§ 1396p(b)(1)(B) and 1396a(a)(18).

Minnesota Statutes Annotated § 256B.042, which deals with third party liability, provides that "[w]hen the state agency provides, pays for or becomes liable for medical care, it shall have a lien for the cost of the care upon any and all causes of action which accrue to the person to whom the care was furnished, or to the person's legal representatives, as a result of the injuries which necessitated the medical care." Minn. Stat. Ann. § 256B.042(1) (West 1992). The state attorney general or "appropriate county attorney acting at the direction of the attorney general shall represent the state agency to enforce the lien created under this section or, if no action has been brought, may initiate and prosecute an independent action against a person, firm, or corporation

that may be liable to the person to whom the care was furnished." Minn. Stat. Ann. § 256B.042(3). In all cases in which the lien is enforced, the MA recipient "must receive at least one-third of the net recovery after attorney fees and other collection costs." Minn. Stat. Ann. § 256B.042(5).[4]

## III.

A district court's interpretation of federal statutes is reviewed de novo. Cedar Rapids Community School Dist. v. Garrett F., 106 F.3d 822, 824 (8th Cir. 1997), petition for cert. filed, 65 U.S.L.W. 3768 (U.S. May 8, 1997)(No. 96-1793). The starting point in interpreting a statute is always the language of the statute itself. United States v. Talley, 16 F.3d 972, 975 (8th Cir. 1994). If the plain language of the statute is unambiguous, that language is conclusive absent clear legislative intent to the contrary. Id. Therefore, if the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end. Citicasters v. McCaskill, 89 F.3d 1350, 1354-55 (8th Cir. 1996). "If on the other hand, the language of a statute is ambiguous, we should consider 'the purpose, the subject matter and the condition of affairs which led to its enactment.'" United States v. S.A., 129 F.3d 995, 998 (8th Cir.

---

[4]This subsection provides in full as follows:

> Upon any judgment, award, or settlement of a cause of action, or any part of it, upon which the state agency has filed its lien, including compensation for liquidated, unliquidated, or other damages, reasonable costs of collection, including attorney fees, must be deducted first. The full amount of medical assistance paid to or on behalf of the person as a result of the injury must be deducted next, and paid to the state agency. The rest must be paid to the medical assistance recipient or other plaintiff. The plaintiff, however, must receive at least one-third of the net recovery after attorney fees and other collection costs.

Minn. Stat. Ann. § 256B.042(5).

1997)(citations omitted), <u>cert. denied</u>, 118 S. Ct. 1200 (1998). "When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." <u>Id</u>.

Norwest contends the enactment of the SNT amendments changed the general rule that Medicaid is a payor of last resort. Instead under these amendments, Norwest argues, Medicaid becomes a payor of first resort conditioned upon the pay-back provisions in the SNT. When an SNT is created, Norwest contends, repayment for any MA provided after October 1, 1993, is deferred until the beneficiary's death. It premises this argument on the fact that Congress made the amendments effective for all MA provided after October 1, 1993, without providing for a separate pay-back period for that part of the total MA which is subject to assignment under § 1396k on that date. It argues that full meaning is given to both statutes only if an assignment under § 1396k is deferred until the death of a trust beneficiary.

The flaw in Norwest's analysis is that the SNT amendments and the language Norwest relies on deal only with the proper calculation of an individual's Medicaid eligibility and the effective date of those changes. As the district court noted, the amendments leave unaltered the recovery and assignment provisions of the Medicaid law.[5] The applicable Minnesota statutes provide no exemption for SNT assets.

The provisions at issue here, § 1396k and § 1396p(d)(4)(A), do not conflict in either text or purpose. The first provision, § 1396k, is designed to maximize the effectiveness of MA by ensuring Medicaid is a payor of last resort. The second provision, § 1396p(d)(4)(A), provides a mechanism by which persons with long-term

---

[5]Norwest also argues that the district court confused the legislative history of a New York statute with the legislative intent of Congress. While it appears the district court did mistakenly refer to the wrong legislative history in relying on <u>Cricchio v. Pennisi</u>, 660 N.Y.S.2d 679 (N.Y. 1997), its analysis was nevertheless sound.

disabilities can accept funds to be used for their non-medical needs while remaining eligible for MA.

As the district court noted, adopting Norwest's position would allow a Medicaid recipient, who secures a judgment or settlement, to evade an existing state lien by placing the proceeds in an SNT. Norwest, 969 F. Supp. at 534. This interpretation would "eviscerate Congress's clearly expressed intention that these funds be repaid" and negate the "Social Security Act's comprehensive scheme permitting states to place these liens." Id. We hold that the SNT amendments do not postpone the state's right to enforce its vested and existing Medicaid lien. See also, Payne v. State, Dept. of Human Resources, Division of Medical Assistance, 486 S.E.2d 469 (N.C. App. 1997). Thus, a state may require a Medicaid lien imposed on the proceeds of a personal injury award or settlement to be satisfied before the remaining funds are placed in an SNT.[6]

IV.

On appeal, the following issues are raised for the first time: (1) whether Minnesota's lien granted by its third-party recovery scheme codified at Minnesota

---

[6]The court is advised that the HCFA Medicaid director on June 5, 1996, sent a memorandum to all state Medicaid directors stating that the placement of funds from a third-party settlement into an SNT is a violation of the individual's duty to cooperate. With respect to this HCFA directive, appellee contends we need not definitely resolve the issue of whether we must defer to the agency's interpretation under Chevron, U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984), because the text of the statute and the policy arguments clearly support its position. We agree.

Statutes Annotated § 256B.042 is contrary to the provisions of the Medicaid Act; [7] (2) whether the lien may be satisfied out of the entire amount of the personal injury award or settlement, or only that portion of the settlement attributable to past medical expenses; and (3) whether the state must bear some portion of the cost, including attorney's fees, of securing the award or settlement.

"As a general rule, we will not consider issues not presented to [the lower court] in the first instance. We may, however, consider an issue for the first time on appeal 'when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case,' or where manifest injustice might otherwise result." First Bank Investors' Trust v. Tarkio College, 129 F.3d 471, 477 (8th Cir. 1997)(citations omitted). We have also said that we will ordinarily not consider issues first raised in reply briefs. United States v. Darden, 70 F.3d 1507, 1549 n. 18 (8th Cir. 1995), cert. denied, 116 S. Ct. 2567 (1996).

---

[7]In this regard, Norwest argues Minnesota's third-party recovery scheme is inconsistent with the requirements of federal law and therefore invalid. Among other things, Norwest argues the scheme fails to recognize the fundamental difference between an assignment of a cause of action and a subrogation of interest. It contends the third-party recovery scheme is invalid because Minnesota does nothing but impose a lien upon the portions of a cause of action still retained by the MA recipient. Further, it contends the statute violates § 1396k's requirement that the state, not the MA recipient, pursue the liable third-party to collect the payments for medical care. It contends the use of the lien impermissibly shifts this burden to the MA recipient.

Norwest concedes these arguments were not specifically addressed by the lower court or by the parties. The DHS has moved to strike the portions of the reply brief raising these new substantive arguments. The motion to strike was taken under advisement by an order entered on December 9, 1997.

In this case, neither the parties nor the trial court specifically addressed these issues.  Without an adequate record, we decline to make these determinations in the first instance.  However, we believe that justice requires that the case be remanded to the district court so that it may have a chance to address these issues.   DHS has not had the opportunity to brief these issues and we believe additional argument would be helpful, if not required.  This is particularly true of the issue regarding the validity of Minnesota's third-party recovery scheme.

For the reasons discussed above, we affirm the district court's decision as to the timing of the payment of Medicaid liens.  However, we remand the case to the district court for consideration of the issues outlined above and such further proceedings as it deems necessary.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.