# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3439

_____

United States of America, ex rel.          *
J. Russell Hixson; United States           *
of America ex rel Terrence D. Brown,       *
                                           *
            Appellants,                    *
                                           *   Appeal from the United States
      v.                                   *   District Court for the Southern
                                           *   District of Iowa.
Health Management Systems, Inc.;           *
ACS State Healthcare, LLC, formerly        *
known as Consultec, Inc.; Kevin            *
Concannon; Eugene L. Gessow,               *
                                           *
            Appellees.                     *

_____

Submitted:  June 16, 2010
    Filed:  July 30, 2010

_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Attorneys J. Russell Hixson and Terrence Brown filed this *qui tam*[1] action on behalf of the United States against Health Management Services (HMS) and ACS State Healthcare, two companies that contracted to perform work for Iowa's Medicaid program, and against two employees of the Iowa Department of Health Services. The relators claimed that the defendants violated the False Claims Act (FCA), *see* 31 U.S.C. §§ 3729-3733, by obtaining federal funds to pay for medical care resulting from medical negligence without seeking reimbursement from the tortfeasors as federal law requires. The defendants moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(1), (6). The district court[2] rejected the defendants' jurisdictional argument but dismissed the complaint for failure to state a claim. *United States ex rel. Hixson v. Health Management Sys., Inc.*, 657 F. Supp. 2d 1039 (S.D. Iowa 2009). Relators appeal and we affirm.

## I.

The district court relied on undisputed facts in concluding that it had subject matter jurisdiction, and thus we review *de novo* its application of the law to those facts. *See Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008).

The FCA allows *qui tam* relators to recover from persons who make false or fraudulent claims against the United States, but provides that no court has jurisdiction if the action is based on "allegations or transactions" that have already been publicly disclosed in an administrative hearing unless the person who brings the action is an "original source." 31 U.S.C. § 3730(e)(4)(A) (2008). We have explained that the

---

[1]"*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.' " *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007).

[2] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

jurisdictional bar to an FCA claim exists only "when the essential elements comprising [the] fraudulent transaction have been publicly disclosed so as to raise a reasonable inference of fraud"; to bar the action, the disclosure must reveal the " 'critical elements of the fraudulent transaction themselves.' " *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1512-14 (8th Cir. 1994) (quoting *United States ex rel. Springfield Terminal Ry. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir.1994)), *cert. denied*, 515 U.S. 1142 (1995).

Here the defendants rely on disclosures in state[3] administrative documents showing that the defendants did not pursue reimbursement of Medicaid funds from tortfeasors in medical malpractice cases. We conclude that these documents do not disclose the "essential elements" of what the relators sought to prove. *See Rabushka*, 40 F.3d at 1514. In addition to showing that the defendants failed to seek reimbursement, the relators had to show that the defendants participated in claiming federal funds without deducting the money that they should have obtained from the tortfeasors. Because the administrative documents that the defendants relied on did not disclose this essential element – the false claim itself – we cannot say that their claims were "based upon ... public disclosure of allegations or transactions" under the FCA. *See* 42 U.S.C. § 3730(e)(4)(A) (2008). The district court therefore had subject matter jurisdiction over the case and we need not decide whether either relator is an "original source."

---

[3]We recognize that Congress recently amended § 3730(e)(4) to limit the source of disclosures to federal (not state or local) administrative proceedings, but the amendment is not retroactive and thus has no application here. *Graham County Soil & Water Cons. Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010); *see* Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119, 901-02 (March 23, 2010).

## II.

We review *de novo* the district court's order granting the motion to dismiss, accepting the allegations contained in the complaint as true and drawing all reasonable inferences in the relators' favor. *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 555 (8th Cir. 2006), *cert. denied*, 549 U.S. 881 (2006). The relators claim that the defendants violated the FCA by knowingly presenting or causing to be presented false or fraudulent claims to the United States; knowingly making, using, or causing to be made or used, a false record or statement material to false or fraudulent claims; or conspiring to commit either of these violations. *See* 31 U.S.C. § 3729(a)(1)(A), (B), (C).

States that elect to participate in Medicaid by providing certain medical care and services to needy persons receive a portion of their funding from the federal government and, in return, must meet certain federal requirements. *See Harris v. McRae*, 448 U.S. 297, 301 (1980). Federal law requires each participating state to "ascertain the legal liability of third parties ... to pay for [an individual benefits recipient's] care and services available under" the state's Medicaid plan and to "seek reimbursement for [medical] assistance to the extent of such legal liability." 42 U.S.C. § 1396a(a)(25); *Arkansas Dep't. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 275-76 (2006). The relators contend that the defendants failed to comply with § 1396a(a)(25) and agree with the district court's characterization of their legal theory: When the defendants submit, or cause to be submitted, claims for federal Medicaid funds, without deducting overpayments resulting from the defendants' failure to comply with the requirement that they seek reimbursement for treatment expenses necessitated by medical negligence, they are submitting false claims under the FCA. *See Hixson*, 657 F. Supp. 2d at 1045.

### A.

The defendants argue that they did not seek reimbursement in medical malpractice cases because Iowa Code § 147.136 precluded Medicaid recipients from

recovering those costs, and Medicaid's right to reimbursement is wholly dependent on the recovery right of its recipient. According to the Iowa Supreme Court, the state legislature passed § 147.136 to eliminate the collateral-source rule in medical malpractice cases, in the hopes of decreasing malpractice premiums and making health care more affordable. *See Heine v. Allen Memorial Hosp. Corp.*, 549 N.W.2d 821, 823-24 (Iowa 1996). (Under the collateral source rule, a plaintiff's damages in a tort action are not reduced by benefits received from a source "wholly independent of and collateral to" the tortfeasor. *Id.* (internal citation omitted)).

Section 147.136 provides that in actions against medical care providers based on medical negligence, "the damages awarded shall not include actual economic losses incurred ... by the claimant by reason of the personal injury, including but not limited to, the cost of reasonable and necessary medical care, ... to the extent that those losses are replaced or are indemnified ... by governmental ... benefit programs or from any other source except the assets of the claimant or of the members of the claimant's immediate family." Thus the defendant in a medical malpractice case is not liable to the plaintiff for medical expenses if they have been "replaced" by another source, such as a government program. The defendants say that they determined that Medicaid benefits replaced the medical costs incurred by a Medicaid recipient and so § 147.136 precluded Medicaid recipients from recovering those costs in a medical malpractice action. Under this reading of the statute, the Medicaid beneficiary, who must assign his or her rights to recovery of costs paid by Medicaid to the state Medicaid program, *see* 42 U.S.C. § 1396k(a)(1), would have nothing to assign in a medical malpractice case in Iowa. The defendants therefore concluded that they had no basis for pursuing reimbursement.

The Iowa Supreme Court has not specifically been asked to determine whether § 147.136 applies to Medicaid payments. We think, however, that the court's opinion on a closely related issue indicates that Medicaid is merely another "collateral source" under § 147.136. *See Peters ex. rel. Peters v. Vander Kooi*, 494 N.W.2d 708, 714

(Iowa 1993). In a section titled, "Evidence of Collateral Source Benefits," the *Peters* court observed that the defendants had presented evidence at the medical malpractice trial that "collateral source payments" might be available to the plaintiffs from various listed sources, including Medicaid. After determining that § 147.136 was "[a]t issue," the court agreed with the plaintiffs that the jury instructions should have explained that the defendants had to show that the plaintiffs could actually obtain a particular "collateral source amount[]" before that amount could be deducted from their damages. In an unpublished opinion, the Iowa Court of Appeals has described *Peters* as "finding it was permissible under section 147.136 to present evidence of Medicaid benefits to allow jury to make determination of recovery in light [of] collateral source payments." *Mohammed v. Otoadese*, No. 05-1670, 2006 WL 3313770, at *3 (Iowa Ct. App. Nov. 16, 2006) (unpublished), *vacated on other grounds*, 738 N.W.2d 628 (Iowa 2007). Although the relators rely heavily on a trial-court decision that refused to apply § 147.136 to preclude recovery of Medicaid costs, the case, of course, has no precedential value. In addition, the case involved recovery from a Medicaid recipient's estate, which federal law specifically permits in some cases following the recipient's death, *see* 42 U.S.C.A. § 1396p(b), a circumstance not at issue here. And we see no merit in the relators' contention that the defendants are somehow bound by an interpretation of § 147.136 that the State of Iowa relied on in that trial-court case against a Medicaid recipient's estate.

But we need not decide whether the defendants correctly interpreted § 147.136 since a statement that a defendant makes based on a reasonable interpretation of a statute cannot support a claim under the FCA if there is no authoritative contrary interpretation of that statute. That is because the defendant in such a case could not have acted with the knowledge that the FCA requires before liability can attach. *See* 31 U.S.C. § 3729(b)(1). As the D.C. Circuit noted in *United States ex rel. Siewick v. Jamieson Sci. & Eng'g, Inc.*, 214 F.3d 1372, 1378, 341 U.S. App. D.C. 459, 465 (D.C. Cir. 2000), "it is hard to see how [the relators] could ... have satisfied even the loosest standard of knowledge [under the FCA], *i.e.*, acting 'in reckless disregard of the truth

or falsity of the information,' " when the relevant legal question was unresolved. *Id.* (quoting 31 U.S.C. § 3729(b)(1)(iii)); *cf. Safeco Ins. v. Burr*, 551 U.S. 47, 70 n.20 (2007). And we agree with the Ninth Circuit's holding that a defendant does not act with the requisite deliberate ignorance or reckless disregard by "tak[ing] advantage of a disputed legal question." *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) (internal quotation omitted).

Because the plain language of § 147.136 and the legislature's apparent intent quite evidently at the very least support a conclusion that a plaintiff in a medical malpractice case cannot recover costs already paid by the government, the defendant's interpretation of the applicable law is a reasonable interpretation, perhaps even the most reasonable one. As we have said, the relators based their allegation that the statements and the claims made to the government were false on a legal conclusion that federal law required the defendants to seek reimbursement from tortfeasors in medical malpractice cases. Because there is a reasonable interpretation of the law that does not obligate the defendants to seek reimbursement, we hold that the relators have not stated a claim under the FCA.

The relators maintain that another state statute, Iowa Code § 249A.6, required the defendants to assert a Medicaid lien "upon all monetary claims which the recipient may have against" medically negligent tortfeasors. Iowa Code § 249.6.2. But the statute actually provides that the state has a lien against "third parties," *id.*, and the statute defines the term "third parties" as a person or entity "which is or may be liable" to pay that recipient's medical costs, Iowa Code § 249.6.6. As the Iowa Supreme Court explained in a slightly different context, § 249A.6 is intended "to permit the State to enforce its right of subrogation against persons who were *legally liable to a recipient* for medical expenses incurred under [the state Medicaid program]." *State ex rel. Miller v. Phillip Morris Inc.*, 577 N.W.2d 401, 405 (Iowa 1998) (emphasis added). Because we have already concluded that medically negligent tortfeasors have no liability for medical costs paid by Medicaid under a reasonable interpretation of

-7-

§ 147.136, it follows that these tortfeasors are not third parties under § 249.6 (and certainly this interpretation is reasonable). Therefore we do not believe that § 249A.6 required the defendants to file a lien, and that statute does not assist the relators in making out a claim in this case.

## B.

The relators argue, in the alternative, that if § 147.136 prohibits the recovery of Medicaid costs in medical malpractice cases, that statute is preempted by federal law because Congress intended Medicaid to be the "payor of last resort" for a recipient's medical bills. *See Norwest Bank of North Dakota, N.A. v. Doth*, 159 F.3d 328, 333 (8th Cir. 1998); *see also* 42 U.S.C. § 1396k. We note, however, that the Supreme Court in *Ahlborn*, after recognizing "that Congress, in crafting the Medicaid legislation, intended that Medicaid be a 'payer of last resort,' " held that the plain language of the statute must be followed, even if that language limited the state's right to recovery and might appear inconsistent with that intent. *Ahlborn*, 547 U.S. at 291-92 (quoting S. Rep. No. 99-146, p. 313 (1985)).

But we do not believe that it matters in the present context whether the statute is actually preempted: As we have said, to prevail here the relators must show that there is no reasonable interpretation of the law that would make the allegedly false statement true – in this case, that the defendants could have no reasonable basis to believe that they could not obtain reimbursement in medical malpractice cases. Therefore, to succeed on their preemption theory the relators would have to show that the defendants could not reasonably believe that § 147.136 was *not* preempted. Understandably, the relators do not even assert that they have made such a showing. Because we think that the defendants had good reason to rely on § 147.136, the relators' preemption argument cannot support an FCA claim.

We affirm the judgment of the district court.

_____