OPINION OF THE COURT
Paul G. Feinman, J.
Plaintiff seeks an order declaring that the settlement reached in the above-captioned action pertains solely to past pain and suffering and that the New York City Department of Social Services (DSS) and/or the New York City Human Resources Administration are precluded from satisfying any liens from any settlement funds. The motion is granted only to the extent that the matter shall be set down for a hearing before this court to determine what portion of the settlement is deemed to be for pain and suffering and what amount is to be repaid to DSS, and is otherwise denied.
Background
The decedent Austin Harris was badly burned in a shower in April 2002 when he was left unwatched by his home attendant, who then clothed him and left his condition to be discovered by his niece several hours later (order to show cause, Eisenman affidavit If 3). After months of extensive and painful hospital treatments including surgical debridements and the amputation of his right leg due to ulcerations, he died on February 5, 2003, without ever returning home (Eisenman affidavit If 3). His niece, as administratrix of his estate, commenced an action in 2003 against the home attendant, her agency and hospital, and the City of New York. With a trial date of November 1, 2006, the parties entered into settlement negotiations. According to plaintiff, the parties reached a settlement agreement wherein plaintiff would accept $1,500,000 for pain and suffering.[1] This amount is one half of the potentially available insurance coverage and, as stated by the attorney for the City defendants, “represent[s] a reasonable settlement for the pain and suffering of the plaintiffs decedent without accounting for special damages such as expenses for medical care and treatment, nursing home care and other related expenses” (Dalton affidavit at 2). The City defendants concede that a jury verdict “could have greatly exceeded the agreed upon settlement, and that the entirety of the policy limits were reasonably at risk” (Dalton affidavit at 2).
*676 At issue is an outstanding Medicaid lien for medical expenses paid by the DSS on behalf of the decedent over the course of the last 10 years of his life in the amount of $296,158.33 (order to show cause, exhibit T). According to plaintiff, the municipal defendants requested that DSS waive this lien, but DSS has refused (Eisenman affidavit K 21).[2] Plaintiff therefore brings this postsettlement motion by order to show cause seeking a judicial determination as to the percentage of the settlement deemed to be for pain and suffering and what, if any amount, is to be made available to repay medical expenses. She argues that the entire settlement should be designated for the pain and suffering endured by the decedent, and that DSS as well as the Human Resources Administration and the United States Department of Health and Human Services, Center for Medicare and Medicaid Services, should be precluded from seeking to satisfy their respective Medicaid and Medicare liens from any portion of the settlement. By stipulation of all parties dated December 18, 2006, the portion of the instant application which sought relief regarding the nonparty United States Department of Health and Human Services was discontinued without prejudice to the issue being addressed against such nonparty in the United States District Court. This stipulation was also signed by the federal nonparty agency.
DSS argues that, pursuant to Social Services Law § 104 (1), DSS is a preferred creditor against the estate of the decedent, and that its right to recovery arises out of Social Services Law § 369 which provides that recovery “must be pursued” from the estate of any individual or injured person 55 years or older who received medical assistance which Social Services paid for (Social Services Law § 369 [2] [b] [i]). At oral argument, on the record, DSS withdrew its contention that the matter should be transferred to Surrogate’s Court to determine the apportionment of settlement between pain and suffering and medical expenses and other items of damages. The parties agreed to have Supreme Court exercise concurrent jurisdiction with Surrogate’s Court given the procedural history of this particular matter to determine what portion of the funds is subject to the liens. Questions as to whom is actually a creditor or distributee will obviously be determined by the Surrogate’s Court.
*677 Analysis
Medicaid is a jointly funded federal and state program that pays for necessary medical care for qualifying indigent persons (see, 42 USC § 1396 et seq.; Social Services Law § 363 et seq.). Congress has mandated that Medicaid be a “payer of last resort” (see, Arkansas Dept. of Health & Human Servs. v Ahlborn, 547 US 268, 291 [2006], quoting S Rep 146, 99th Cong, 1st Sess, at 313 [1985]). As such, states are required to take “ ‘all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan,’ and seek reimbursement from them (42 USC § 1396a [a] [25] [A], [B]).” (Calvanese v Calvanese, 93 NY2d 111, 116 [1999].) The obligations of Medicaid recipients in New York include their assignment to the State of the right to seek reimbursement from any third party up to the amount of medical assistance paid (Social Services Law § 366 [4] [h] [1]; 18 NYCRR 360-7.4 [a] [4]). The local social services district is subrogated, to the extent of its expenditures for medical care furnished, to any rights a Medicaid recipient may have to third-party reimbursement (Social Services Law § 367-a [2] [b]; 18 NYCRR 360-7.4 [a] [6]). DSS obtains “all of the rights that the recipient has as against the third party to recover for medical expenses, including the ability to immediately pursue those claims against the third party” (Cricchio v Pennisi, 90 NY2d 296, 307 [1997]).
Under Social Services Law § 104-b, DSS may, as an alternative to suing the responsible third party directly, place a lien on the personal injury suits brought by Medicaid recipients against the responsible parties, and the lien will attach to any verdict, judgment, award, or settlement and continue until discharged by the local public welfare official (Social Services Law § 104-b [3], [7]). Until recently, New York’s decisional law had held that DSS has broad authority to pursue the amount of third-party reimbursements to which it is entitled as well as to enforce any hens (see, Gold v United Health Servs. Hosps., 95 NY2d 683 [2001]), and that the entire amount of a personal injury settlement was available to satisfy a Medicaid lien and not just the portion of the settlement specifically allocated to past medical expenses (see Calvanese v Calvanese, 93 NY2d 111 [1999]; Cricchio v Pennisi, 90 NY2d 296 [1997]). However, in May 2006, the United States Supreme Court issued Arkansas Dept. of Health & Human Servs. v Ahlborn (547 US 268 [2006]), which squarely held that the “anti-lien” provision found in 42 *678 USC § 1396p (a) bars states from imposing liens against the property of Medicaid recipients prior to their deaths, and that the statutory exception to that provision, permitting states to enforce statutory liens on settlements, judgments, or awards of monies to Medicaid recipients, is restricted to the portion of the settlement, judgment, or award that represents reimbursement for actual medical costs received prior to the recipient’s death (42 USC § 1396a [a] [25]; § 1396k [a]).
In Ahlborn, the Arkansas state Medicaid program paid over $200,000 in medical expenses following the respondent’s car accident. Respondent brought suit in state court against two alleged tortfeasors for personal injury damages including medical costs, pain and suffering, lost earnings, and lost future earnings, and settled out of court for a lump sum of $550,000, without the state’s participation. The state then sought to enforce its Medicaid lien. The trial court held that the state was entitled to be reimbursed for the entire amount of Medicaid expenses paid out. This ruling was reversed on appeal and the United States Supreme Court affirmed. The Supreme Court held that the lien asserted by the state for the entire amount of medical expenses violated the antilien law as it required depletion of nonmedical expense compensation. The Court noted with apparent approval that the parties had, in order to facilitate the trial court’s resolution of the legal questions, stipulated as to the value of the claim and the percentage of that sum which was represented by the settlement figure, and the suggested figure representing the proportion of the total that should be allocated as repayment of medical expenses was thus less than $36,000 (547 US at 274). Notably, the state agency conceded that had a jury or judge allocated a sum for medical payment out of a larger award, the agency would have been entitled to reimburse itself only from the portion so allocated, even if the amount were smaller than the total amount of the Medicaid expenses (547 US at 282 n 11).
A few published decisions from New York courts have already addressed Ahlborn’s meaning. In Lugo v Beth Israel Med. Ctr. (13 Misc 3d 681 [Sup Ct, NY County 2006]), where a medical malpractice action settled for $3,500,000 and the DSS lien for $47,349 was challenged in the course of determining the infant’s compromise order, the court held that pre-Ahlborn rulings suggesting that DSS could “automatically” recoup its lien from the entire settlement proceeds, were implicitly overruled (13 Misc 3d at 686). Lugo holds that, pursuant to Ahlborn, the court has *679 the power to allocate settlement proceeds and to hold hearings to determine the value of the case, the items of damages and settlement proceeds, to release settlement funds to the plaintiffs, or hold disputed amounts in escrow until a final determination is reached concerning the amount to be reimbursed to DSS as needed (13 Misc 3d at 688-690).
In Matter of Ramirez (14 Misc 3d 480 [Sur Ct, Bronx County 2006]), a decision relied upon by DSS herein, the Surrogate’s Court held that Ahlborn’s ruling pertained solely to limit the State’s rights to recover from Medicaid recipients’ tort actions, but does not limit any right to recover from the estates of Medicaid recipients. Ramirez was a proceeding to compromise a wrongful death action and to discontinue a personal injury action. The decedent’s tort settlement did not include any recovery for medical expenses which had been paid for by the defendant’s no-fault insurer. DSS sought recovery for other medical costs expended over the previous 10 years based not on a hen pursuant to Social Services Law § 366 (4) (h) (1) and § 104-b, which Ahlborn addressed and limited, but pursuant to Social Services Law § 369 (2). Section 369 (2) (b) (i) (B) of the Social Services Law, the “counterpart” to 42 USC § 1396p (b) (1) (B), states in pertinent part that “recoveries [of medical assistance] must be pursued ...(B) from the estate of an individual who was fifty-five years of age or older when he or she received such assistance.” The Ramirez court observed that DSS was required by statute to assert its claim against the decedent’s estate under Social Services Law § 369 (2) (b) (i) (B) regardless if the assets arose from a personal injury recovery, a lottery, or other source (Ramirez, 14 Misc 3d at 483).
DSS, in relying on Ramirez, argues that it properly seeks to collect from his estate the amounts paid out by Medicaid on his behalf over the course of 10 years as mandated by section 369 of the Social Services Law. Section 369 accords with the federal provision that “[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan.” (42 USC § 1396p [a] [1].) DSS further argues that neither Ahlborn nor Lugo is controlling, and that Social Services Law § 369 places no limitation on its right herein to recover all Medicaid expenses provided rather than a proportionate share (Knapp affidavit in opposition ¶ 10).
It has been held that it is for the court to determine the extent to which a personal injury settlement addresses the claim for *680 past medical expenses, and the determination “is not foreclosed by the form of the settlement documents or the language used by the attorneys in the settlement stipulation, if that form and language do not truly reflect the consideration of the settlement, or are chosen merely as a means to defeat DSS’ recovery” (Simmons v Aiken, 100 AD2d 769, 770 [1st Dept 1984] [holding that “the court may properly consider whether the pleadings and bill of particulars asserted a claim for medical expenses, whether the settlement reserved or released such claims, and perhaps what role the fact and size of the medical expenses played in the settlement”]). Although plaintiff argues that she settled the litigation with the defendants on the basis that the entire award was to be considered for pain and suffering, and the defendants concede that they could have faced much greater financial liability had a trial been held, this does not address the issue of the status of DSS as a preferred creditor. Furthermore, the court cannot conduct a full Lugo-type analysis on the extant record. DSS properly brings its claim; however, the amount it will collect is subject to the court’s determination. A hearing is ordered to determine the percentage of the settlement that is for pain and suffering and what amount is to be paid to DSS to reimburse it for medical expenses paid (see, MeClenahan v Farber, 247 AD2d 449 [2d Dept 1998] [holding that trial court should have conducted a hearing to determine if any portion of the settlement of the infant plaintiff’s claim was intended to cover past reimbursed medical expenses]).
It is ordered that the motion is granted to the extent that the issue of the percentage of the settlement in the above-captioned matter to be deemed to be for pain and suffering and the amount of the settlement proceeds to be made available to repay medical expenses is set down for a framed-issue hearing on the Lugo factors before it.

. Plaintiff originally demanded $3,000,000, while defendants offered $950,000 (Eisenman affidavit 111118, 19).

. A second lien in the amount of $165,471.92, reflecting amounts spent on medical treatment following the accident, will apparently not be pursued by Medicare (order to show cause, exhibit S; see Eisenman affidavit 1Í1Í 32, 33).