OPINION OF THE COURT
Jack M. Battaglia, J.
In the afternoon of July 25, 2001, at Pier 4 of the Brooklyn Army Terminal, plaintiff Shlomit Fried, then 16 years old, was operating a Chevrolet Astro minivan owned by the father of a male friend, Nir Yadgar, 19 years old, who was apparently teaching her to drive, when, for reason or reasons unknown, the van left the pier, and entered Gowanus Bay. Mr. Yadgar was killed; Ms. Fried suffered catastrophic injuries.
Plaintiff Iris Fried, mother and natural guardian of Shlomit Fried, commenced this action in 2002 on behalf of her infant daughter and on her own behalf. When Shlomit Fried became of age, Iris Fried was appointed her incapacitated daughter’s guardian ad litem (see CPLR 1201 et seq.), and has since been appointed her guardian pursuant to article 81 of the Mental Hygiene Law. Shlomit Fried’s father, Uri Fried, is also a plaintiff. By order dated June 17, 2011, Robert Kruger, Esq. was appointed special guardian for plaintiff Shlomit Fried.
Plaintiffs’ second amended complaint purported to name 36 different defendants. By the time of trial, the defendants were City of New York (the City), New York City Economic Development Corporation (EDC); Signe Nielsen Landscape Architect, P.C. (Nielsen); Han-Padron Associates, LLP Han-Padron Associates, LLC, Han-Padron Associates Consulting Engineers, PLLC, and Padrón Associates, Inc. (Han-Padron or the Han-Padron defendants); and Iffland Havanagh Waterbury, PLLC, Iffland Kavanaugh & Waterbury P.C., Iffland Kavanaugh & Waterbury P.C., Inc., and Iffland Kavanaugh Waterbury, PLLC (the Iffland Kavanagh defendants), with the Iffland Kavanagh defendants only subject to claims asserted by the City and EDC.
On the record on the eighth day of trial, April 25, 2011, plaintiffs settled their claims against the City and EDC for $8.25 million, and the City and EDC settled their claims against the Iffland Kavanaugh defendants on the latters’ contribution to the settlement with plaintiffs. The attorneys for the City and EDC did not participate in the balance of the trial, although the fault of the City and EDC would still be in issue at least for purposes of General Obligations Law § 15-108. The settlement has since been approved in this court’s order approving settlement, counsel fees and disbursements dated September 13, 2011 (the infant compromise order).
*556 Plaintiffs’ fundamental claim at trial was that Pier 4 was negligently designed in that vehicle-resistant barriers were not included at the perimeter, allowing a vehicle to leave the pier and enter the water. The jury was instructed in accordance with general negligence principles, modified to reflect that Pier 4 was to be treated as a “highway.” (See decision and order of Honorable David I. Schmidt on motions for summary judgment, dated Nov. 30, 2009, at 22-24; decision and order of Honorable David I. Schmidt on motions for leave to renew and reargue, dated Nov. 10, 2010, at 14-16; see also Groninger v Village of Mamaroneck, 17 NY3d 125 [2011]; Krausch v Incorporated Vil. of Shoreham, 87 AD3d 715 [2d Dept 2011].)
Responding to verdict sheet interrogatories, the jury determined that Pier 4 was negligently designed in that vehicle-resistant barriers were not included at the perimeter, and that Han-Padron and EDC were each negligent in not including vehicle-resistant barriers in the design for Pier 4, but that Nielsen was not negligent. The jury also determined that Shlomit Fried was negligent in the operation of the vehicle on Pier 4, and that her negligence was a substantial factor in allowing the vehicle to leave the pier and enter the water. The City did not appear on the verdict sheet, and was not addressed in the charge, as all agreed, at least for these purposes, that the City would be vicariously liable for any negligence by EDC.
The jury also made two allocations of fault, with and without consideration of the fault of Ms. Fried. The jury first determined that EDC was 75% at fault, Ms. Fried 20% and Han-Padron 5%; and then determined that as between the defendants, EDC was 90% at fault and Han-Padron 10%. Asking the jury to allocate twice was precautionary given the open questions concerning the application of General Obligations Law § 15-108 and CPLR article 16.
The Han-Padron defendants moved for an order
“setting aside the jury verdict, pursuant to CPLR § 4404 (a), and granting [them] judgment as a matter of law; or, in the alternative, . . . granting [them] leave to amend [their] Answer responsive to the Second Amended Complaint, pursuant to CPLR 3025 (b), to assert the affirmative defense of set-off, pursuant to General Obligations Law § 15-108,” as a result of plaintiffs’ settlement with the City and EDC. (Notice of motion dated Sept. 30, 2011.)
Plaintiffs moved for an order, “pursuant to CPLR 4404, for judgment notwithstanding the verdict and declaring [the Han *557 Padrón Defendants] 80% responsible, as a matter of law for damages to be awarded and that Han-Padron is only entitled to a set-off in the amount of $8.25 million,” representing the settlement between plaintiffs and the City and EDC. (Notice of motion, undated.)
With a decision and order dated January 19, 2012, this court granted the motion of the Han-Padron defendants only to the extent of granting them leave to amend their answer to the second amended complaint, and denied plaintiffs’ motion, in effect upholding the jury’s verdict as to liability and allocation of fault. (See 34 Misc 3d 1212[A], 2012 NY Slip Op 50062[U] [2012].) A schedule was set between the court and counsel for a damages trial and pretrial in limine motions. The court has since been advised that the action has been settled between plaintiffs and the Han-Padron defendants, but an application for a compromise order has not yet been submitted to the court.
In this motion, plaintiffs seek to declare null and void, vacate or invalidate “any claimed subrogation right, lien, or other reimbursement claims alleged to exist in favor of New York City Human Resources Administration, against any settlement proceeds received or to be received by the Plaintiff.” (See notice of motion.) At the time this motion was served, there was no settlement between plaintiffs and the Han-Padron defendants. As such, this motion relates solely to the validity of a purported Medicaid lien upon settlement proceeds from the settlement between plaintiffs and the City and EDC. For purposes of this motion and the settlement, the parties make no distinction between the City and EDC, and the court will not make any such distinction.
Similarly, neither plaintiffs nor the New York City Department of Social Services (DSS or the Department) addresses whether the validity and enforceability of a Medicaid lien may properly be determined by motion in this action, and neither will the court, other than to note that the Department is an agency of defendant City of New York, as is the Human Resources Administration.
“The Medicaid program, which provides joint federal and state funding of medical care for individuals who cannot afford to pay their own medical costs, was launched in 1965 with the enactment of Title XIX of the Social Security Act (SSA),” and “ [i]ts administration is entrusted to the Secretary of Health and Human Services (HHS), who in turn exercises his authority through the Centers of Medicare and Medicaid Services (CMS).” *558 (See Arkansas Dept. of Health & Human Servs. v Ahlborn, 547 US 268, 275 [2006].) “States are not required to participate in Medicaid, but all of them do.” (Id.) The federal government pays “between 50% and 83% of the costs the State incurs for patient care, and, in return, the State pays its portion of the costs and complies with certain statutory requirements for making eligibility determinations, collecting and maintaining information, and administering the program.” (Id.)
“As a condition of the receipt of Federal program funding, State Medicaid plans must conform with the statutory standards established by Federal law and the regulations promulgated by the Secretary of Health and Human Services.” (Cricchio v Pennisi, 90 NY2d 296, 305 [1997]; 42 USC § 1396a; Social Services Law § 363-a [1].) In this regard, “to contain program costs and ensure that Medicaid remains the ‘payor of last resort’ ” (Calvanese v Calvanese, 93 NY2d 111,116 [1999]), federal law requires states to “take all reasonable measures to ascertain the legal liability of third parties ... to pay for care and services available under the plan,” and seek reimbursement from them. (See 42 USC § 1396k [a] [1] [C]; Calvanese v Calvanese, 93 NY2d at 116 [1999].) “A third party is defined as an individual, entity or program that is or may be liable to pay all or part of the expenditures for medical assistance furnished under the State plan.” (Cricchio v Pennisi, 90 NY2d at 305, citing 42 CFR 433.136.)
Federal law further “requires Medicaid recipients to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan, unless good cause exists for the refusal to cooperate.” (See Calvanese v Calvanese, 93 NY2d at 116 [internal quotation marks and citations omitted]; 42 USC § 1396k [a] [1] [C].) “The recoupment of Medicaid funds from responsible third parties is accomplished by Federal directives that the State plan include assignment, enforcement and collection mechanisms (42 USC § 1396k [a] [1] [A]; § 1396a [a] [25] [I].)” (Cricchio v Pennisi, 90 NY2d at 305.) These directives include requiring a Medicaid applicant to assign to DSS any rights he or she has to seek reimbursement from any third party (see id.; see also Calvanese v Calvanese, 93 NY2d at 117).
In New York, “[a]s an alternative to suing the responsible third party directly, the Department may pursue reimbursement indirectly by placing a lien on personal injury suits *559 brought by a Medicaid recipient against the responsible party.” (See Calvanese v Calvanese, 93 NY2d at 117; Social Services Law § 104-b.)
In their motion, plaintiffs first contend that “no valid ‘lien’ or claim against the settlement proceeds exist due to the failure to follow strict statutory guidelines” of Social Services Law § 104-b. In support, plaintiffs point to and submit only a copy of a letter, dated June 6, 2011, from Amy Wheeler of the Division of Liens and Recovery, in which DSS claims “a right of recovery against the proceeds from the personal injury lawsuit/claim of the above-named plaintiff,” and that the “Medicaid lien is for the amount of $1,332,770 covering the period from September 17, 2001 through May 13, 2011.”
Plaintiffs’ papers also refer to a notice of lien dated “February 11, 2011” that “comes close” to meeting the statutory requirements (see supporting affirmation 1i 19), but do not submit a copy of the notice of lien. Indeed, it appears that the document that plaintiffs may be referring to is the notice of lien dated February 22, 2011 that is attached to DSS’s opposition papers. (See affirmation in opposition, exhibit F.) Moreover, plaintiffs refer to other “correspondences” from DSS attached as exhibit A, but only the June 6, 2011 letter is attached. (See supporting affirmation ¶ 19.)
Plaintiffs’ counsel on the instant motion, Paul K. Isaac, Esq., affirms “[ujpon information and belief, no copies of any valid lien were ever received by Plaintiffs counsel,” but fails to set forth the basis of his information or belief. Plaintiffs’ counsel of record, David A. Roth, Esq., who has represented plaintiffs since the action was commenced, submits an affirmation in support of the motion, but does not refer to any of the letters he received from DSS. As such, Mr. Isaac’s “information and belief’ as to what was received by “Plaintiffs [sic] counsel” is of no value, especially since it is obvious that plaintiffs have not attached to their motion papers all of the correspondence that they received from DSS relating to the purported lien. Similarly, Mr. Isaac’s affirmation that “upon information and belief,” no notice of lien was served on the settling defendants is also without any value since he does not set forth the basis of his information and belief. (See Matter of Farley v Wurz, 217 NY 105, 108 [1916]; Onondaga Soil Testing v Barton, Brown, Clyde & Loguidice, 69 AD2d 984 [4th Dept 1979]; Reitmeister v Reitmeister, 273 App Div 652, 654 [1st Dept 1948].)
As such, since plaintiffs fail to submit all of the documentation that they received from the Department with respect to the *560 purported lien, or any documents received by defendants EDO, City, or Han-Padron, they fail to establish prima facie that said documentation did not comply with statutory guidelines.
In any event, even considering the June 6, 2011 letter and the February 22, 2011 notice of lien, plaintiffs fail to demonstrate that the Department may not assert a valid lien based upon the failure to meet statutory requirements. Social Services Law § 104-b (1) provides:
“If a recipient of public assistance and care shall have a right of action, suit, claim, counterclaim or demand against another on account of any personal injuries suffered by such recipient, then the public welfare official for the public welfare district providing such assistance and care shall have a lien for such amount as may be fixed by the public welfare official not exceeding, however, the total amount of such assistance and care furnished by such public welfare official on and after the date when such injuries were incurred. In all such cases, notice of the commencement of such an action shall be served upon the public welfare district that has provided or is providing such assistance and care, or upon the department of health.
“The commissioner shall endeavor to ascertain whether such person, firm or corporation alleged to be responsible for such injuries is insured with a liability insurance company, as the case may be, and the name thereof.”
Here, it is undisputed that plaintiff Shlomit Fried is a “recipient of public assistance and care,” and that she brought the instant action against defendants on account of her personal injuries. As such, on its face, Social Services Law § 104-b provides that the public welfare district, i.e., DSS, “shall have a lien.” Plaintiffs do not attach any notice served upon DSS notifying them of the commencement of the action against defendants, but it is clear through the correspondence submitted in support and opposition to the instant motion that DSS had notice of the litigation.
More specifically, plaintiffs contend that the written notice (or notices) that they received fail to meet the requirements of Social Services Law § 104-b (2), which provides:
“No such lien shall be effective, however, unless a written notice containing the name and address of the injured recipient, the date and place of the ac *561 cident, and the name of the person, firm or corporation alleged to be liable to the injured party for such injuries, together with a brief statement of the nature of the lien, the amount claimed and that a lien is claimed upon the said right of action, suit, claim, counterclaim or demand by the public welfare official be served prior to the payment of any moneys to such injured party, by certified with return receipt or registered mail upon such person, firm or corporation, and his or her, its or their attorney, if known, and upon any insurance carrier which has insured such person, firm or corporation against such liability. A copy of the notice of lien shall be mailed to such carrier at least twenty days prior to the date on which such carrier makes a payment to the injured party. Except as against such carrier, the effectiveness of the lien against any other party shall not be impaired by the failure to mail the required notice to such carrier. In addition, a true copy of such notice shall be served by regular mail to the welfare recipient and to his or her attorney, if known. Such mailing shall be deemed to be effective, notwithstanding any inaccuracy or omission, if the information contained therein shall be sufficient to enable those to whom the notice is given to identify the injured recipient and the occurrence upon which his or her claim for damages is based.”
Again, to support this contention, plaintiffs only submit a copy of the DSS letter dated June 6, 2011. Presumably, this letter was sent to plaintiffs’ counsel in compliance with Social Services Law § 104-b (2) requiring that “a true copy of such notice shall be served by regular mail to the welfare recipient and to his or her attorney.” The letter indicates, among other things, that DSS has “a right of recovery against the proceeds from the personal injury lawsuit/claim” of plaintiff Shlomit Fried and lists, among other things, the date of the accident, and Ms. Fried’s date of birth and Social Security number. It further indicates that “the Medicaid lien is for the amount of $1,332,770.00 covering the period from September 17, 2001 through May 13, 2011.” Notably, the letter also states that “[y]ou must contact our office at the time a settlement is being considered so that the Department may provide an updated lien amount and participate in negotiations,” and “[sjhould you distribute lawsuit proceeds in disregard of our lien, the Depart *562 ment has the right to proceed directly against you in subrogation.”
Although this letter does not contain all of the elements required for the written notice pursuant Social Services Law § 104-b (2), it contains information “sufficient to enable those to whom the notice is given to identify the injured recipient and the occurrence upon which his or her claim for damages is based.” (See Social Services Law § 104-b [2].) Indeed, neither plaintiffs nor defendants claim any prejudice as a result of any of the missing items in the written notice.
Moreover, as noted above, plaintiffs also refer to, but do not submit, a notice of lien dated “February 11, 2011” that “comes close” to meeting the statutory requirements (see supporting affirmation 1Í19). This document provides the name and address of the “injured recipient,” i.e., Shlomit Fried, the name and address of the law firm representing her, the names of the corporations allegedly liable for her injuries (i.e., defendants), the names of all of the attorneys, the names of the insurance companies, and the date of the accident. There can be no question that this document (if it is the same document referred to by plaintiffs’ counsel) was “sufficient to enable those to whom the notice is given to identify the injured recipient and the occurrence upon which his or her claim for damages is based” (see Social Services Law § 104-b [2]).
It should be noted that plaintiffs refer to, but do not otherwise address, the filing requirement of Social Services § 104-b (3), which provides that upon serving the notice of lien,
“the local public welfare official shall file a true copy thereof in the office of the clerk of the county in which his office is located, and, thereupon the lien of the public welfare official in the amount therein stated shall attach to . . . the proceeds of any settlement of any claim or demand respecting such injuries prior to suit or action.”
Further, Social Services Law § 104-b (7) provides that
“[t]he aforesaid lien shall be valid and effective, when the notice thereof and the statement are served and filed as aforesaid, and shall continue until released and discharged by the local public welfare official by an instrument in writing and filed in the said county clerk’s office, and no release, payment, discharge or satisfaction of any such claim, demand, right of action, suit or counterclaim shall *563 be valid or effective against such lien.”
Indeed, Social Services Law § 104-b (8) provides that the county clerk maintain a “suitable book with proper index, to be called the public welfare lien docket.” Here, neither plaintiffs nor the Department address whether the lien was filed in the public welfare lien docket. As such, plaintiffs make no contention that the lien is not valid and effective based upon the Department’s failure to file the lien, and the court need not further address the issue.
Plaintiffs next contend that “even if it were determined that the lien complied with statutory requirements, no recovery can be enforced against the Plaintiffs settlement proceeds here.” In this regard, plaintiffs argue that the lien may only be enforced by an action pursuant to Social Services Law § 104-b (6), which provides that “[s]uch lien may be enforced by action against those alleged to be liable for such injuries, as aforesaid, by the local public welfare official in any court of appropriate jurisdiction.” Plaintiffs also point to Social Services Law § 367-a (2) (b), which provides that
“upon furnishing assistance under this title to any applicant or recipient of medical assistance, the local social services district or the department shall be subrogated, to the extent of the expenditures by such district or department for medical care furnished, to any rights such person may have to medical support or reimbursement from liable third parties.”
In opposition to plaintiffs’ contention that the Department may not enforce the lien against plaintiffs and may only proceed against liable third parties, the Department contends that “it has long been settled law in New York that a recovery under Social Services Law § 104-b is NOT a recovery from proceeds belonging to the plaintiff but from the third party tortfessor [sic].”
Contrary to plaintiffs’ contentions, in Matter of Homan v County of Cattaraugus Dept. of Social Servs. (74 AD3d 1754 [2010]), the Fourth Department, although not specifically addressing the statutory language of the Social Services Law, rejected the contention that “DSS has only a right of subrogation against the tortfeasor, not a right to a lien against the settlement proceeds” (see id. at 1755).
In any event, the parties’ settlement resolves the issue of who is responsible for satisfying any valid and effective Medicaid *564 lien. At the time that plaintiffs’ settlement with the City and EDC was placed on the record, plaintiffs’ counsel, Richard Gross, Esq., stated that plaintiffs “will hold harmless and release the settling defendants for any and all claims, encumbrances, third-party claims, including Medicaid and Medicare, and we will fully cooperate in providing to the defendants and their carriers any information for reporting and compliance purposes.” (See affirmation in opposition, exhibit D, tr at 1496, lines 8-13.) Indeed, by agreeing to hold the City and EDC harmless, plaintiffs assumed any liability that the City and EDC would have to the Department to satisfy any Medicaid lien. (See e.g. Gualano v Abington Sq. Condominium Assn., 69 AD3d 793, 795 [2d Dept 2010].) This is consistent with the infant compromise order (which is not submitted by either plaintiffs or the Department) that provides,
“ORDERED that the funds received by Robert Kruger as Special Guardian will be held to satisfy the Medicaid lien, if any, as agreed by him and the lien holder, or, failing agreement, as may be determined by this Court or the Guardianship Part, and the balance of the funds not used to satisfy said lien shall remain in said account(s), subject to the supervision of the Guardianship Part, and shall only be distributed pursuant to this Order or the approval of the Guardianship Part by order upon application.” (Emphasis added.)
Based upon the language of the infant compromise order, the payment of funds to Mr. Kruger as Special Guardian “is not payment to plaintiff,” since Mr. Kruger also serves as an escrow agent who is “duty-bound not to deliver the escrow to anyone except upon strict compliance with the conditions imposed.” (See Iannizzi v Seckin, 5 AD3d 555, 556 [2d Dept 2004] [internal quotation marks omitted].) In short, the infant compromise order provides that the funds are to be held by Mr. Kruger to satisfy any Medicaid lien. Plaintiffs do not seek to modify or to vacate the infant compromise order, or to set aside the settlement.
Plaintiffs’ contention that recovery “of a Medicaid lien under New York State Social Services Law Section 104-b is precluded by the Federal Anti-Lien Statute, 42 USC 1396p” is also without merit. In Arkansas Dept. of Health & Human Servs. v Ahlborn (547 US 268 [2006]), the U.S. Supreme Court
“held that the [‘]anti-lien’ provision found in [the federal Medicaid statute] bars states from imposing *565 liens against the property of Medicaid recipients prior to their deaths, and that the statutory exception to the provision, permitting states to enforce statutory liens on settlements, judgments, or awards of monies to Medicaid recipients, is restricted to that portion of the settlement, judgment, or award that represents reimbursement for actual medical costs received prior to the recipient’s death.” (See D.C. v City of New York, 18 Misc 3d 1116[A], 2008 NY Slip Op 50037[U], *3 [Sup Ct, Kings County 2008], quoting Harris v City of New York, 16 Misc 3d 674, 677-678 [Sup Ct, NY County 2007]; Arkansas Dept. of Health & Human Servs. v Ahlborn, 547 US at 284.)
A Medicaid lien cannot be satisfied “out of proceeds meant to compensate the recipient for damages distinct from medical costs — like pain and suffering, lost wages, and loss of future earnings.” (See Arkansas Dept. of Health & Human Servs. v Ahlborn, 547 US at 272.)
New York State courts have consistently held after Ahlborn that the DSS lien is still enforceable, but only as to the portion of the settlement, judgment, or award that represents reimbursement for actual medical costs. Indeed, in Matter of Homan v County of Cattaraugus Dept. of Social Servs. (74 AD3d at 1755), the Fourth Department held that a hearing “[wa]s required to determine the total value of plaintiffs loss, from which the proportionate share of DSS of the settlement proceeds may then be calculated.” (See also Chamorro v Cole, 2010 NY Slip Op 32641[U], *4-5 [Sup Ct, Bronx County 2010]; Homan v County of Cattaraugus Dept. of Social Servs., 24 Misc 3d 1243[A], 2009 NY Slip Op 51854[U], *2-3 [2009], affd 74 AD3d 1754 [2010]; Harris v City of New York, 16 Misc 3d at 679-680; Lugo v Beth Israel Med. Ctr, 13 Misc 3d 681, 688-689 [Sup Ct, NY County 2006].)
Plaintiffs’ citation to the district court opinion in Tristani v Richman (609 F Supp 2d 423 [WD Pa 2009]) is misplaced, since it was reversed for the proposition cited to by plaintiffs. (See Tristani ex rel. Karnes v Richman, 652 F3d 360 [3d Cir 2011].) In its reversal, the Third Circuit held that “[o]ur examination of the text, structure, history and purpose of the Social Security Act leads us to conclude that liens limited to medical costs are not prohibited by the anti-lien and anti-recovery provisions of the Act.” (Id. at 378.) The Third Circuit opined, among other *566 things, that the “widespread and pervasive practice” of states using liens to recoup medical expenses paid on behalf of Medicaid beneficiaries from liable third parties, a practice which has been “overwhelmingly endorsed” by federal and state courts, along with the fact that Congress has “had occasion to amend the anti-lien and anti-recovery provisions, and has chosen not to prohibit” the use of such liens, supports its “holding that Medicaid medical expense liens are excepted from the anti-lien and anti-recovery provisions.” (Id. at 375.)
Lastly, plaintiffs contend that the Medicaid lien here must be vacated on the ground that the settling party and the lien holder are “essentially the same party.” In D.C. v City of New York (18 Misc 3d 1116[A], 2008 NY Slip Op 50037[U] [2008]), this court had occasion to consider whether the City “may enforce a lien against its own funds, where the lien is to recoup medical expenses related to the injury for which settlement is being made.” (See id. at *2.) However, the court determined that it was “neither necessary nor prudent” to resolve the issue “as a general matter” since the issue was not briefed. (See id. at *3.)
Under the facts and circumstances of that case, the petitioners contended that no portion of the settlement represented past medical costs, and the City did not submit any affidavit or affirmation to rebut the petitioners’ contention. The court noted that a “Medicaid lien may not be effectively nullified by the mere expedient of the plaintiff[’s] attorney announcing that the settlement relates to pain and suffering only.” (See id. at *3, quoting Carpenter v Saltone Corp., 276 AD2d 202, 211 [2d Dept 2000]; see also Matter of Homan v County of Cattaraugus Dept. of Social Servs., 74 AD3d at 1755.) Even so, the court determined that
“[w]here, as here, the City is both the holder of the lien and the settling tortfeasor, there is little risk of a ‘scheme by the parties to frustrate the lien asserted by the department for its expenditures’ or that ‘the settlement [might be] consciously structured in such a manner as to deprive the department of reimbursement.’ ” (See D.C. v City of New York, 2008 NY Slip Op 50037[U] at *3-4, quoting Pang v Maimonides Med. Ctr.-Maimonides Hosp., 127 AD2d 641, 642 [2d Dept 1987].)
The court further noted that “[o]ne would expect, moreover, that where the City intended to reduce the amount provided to compensate the plaintiff for the injury it caused by the amount *567 of expenses incurred in treating the injury, the City would have expressly so qualified its offer.” (See D.C. v City of New York, 2008 NY Slip Op 50037[U] at *4.)
Even though D.C. v City of New York was not determined on the basis of a general rule, this court opined that “[i]n light of the purpose and function of the lien, it is, at the least, counter-intuitive that the City may enforce a lien against its own funds, where the lien is to recoup medical expenses related to the injury for which settlement is being made.” (See id. at *2.) Although noting that “[t]he Medicaid lien is a vehicle in service to the assignment, subrogation, and recoupment provisions of federal and state law” (id. at *2), the court opined that “[th]e presence of federal and state interests” do not justify enforcement of the lien since DSS has “powers both to fix the amount of the lien and to release and discharge it.” (Id., quoting Calvanese v Calvanese, 93 NY2d 111, 121 [1999].)
Unlike D.C. v City of New York, plaintiffs here do not submit any attorney affirmation or point to any portion of the record to establish that no portion of the settlement represents past medical expenses. Indeed, in opposition to this motion, DSS submits an affirmation from Kevin Faley, who represented the City and EDC at trial and negotiated the settlement on their behalf, to the effect that the settlement encompassed past and future medical costs. However, that was not part of the settlement as placed on the record on April 25, 2011, and the settlement agreement itself does not expressly account for past and future medical costs, and the agreement purports to be the “entire agreement.” (See settlement agreement and release ¶ 13; see also generally M.D.T. 1984 Duplications v Mark IV Indus., 283 AD2d 1001, 1002 [4th Dept 2001] [applying the parol evidence rule to a written settlement agreement].)
On this contention, plaintiffs do not point to any authority other than this court’s decision in D.C. v City of New York, which did not expressly adopt a broad rule barring DSS, a city agency, from enforcing a lien against proceeds offered by the City in settlement of a tort claim against the City, but which was decided instead upon a finding that the settlement in that case did not include compensation for medical expenses.
The issue was recently addressed, however, in another state court decision, Matter of Mahadi Hassan Richard (23 Misc 3d 1124[A], 2009 NY Slip Op 50926[U], *2 [Sup Ct, Queens County 2009]). The court refused “to permit a Defendant municipality to settle an action against itself and then argue to the Court *568 that fulfilling its part of the agreement would be against the Medicaid rules,” and stated that “New York Health and Hospital Corporation, as the malfeasor, can not enter into a Stipulation which will then be dishonored by another city agency,” i.e., DSS. (See id. at *3.)
In opposition, DSS points to Sullivan v County of Suffolk (1 F Supp 2d 186 [ED NY 1998], affd 174 F3d 282 [2d Cir 1999]) where the district court rejected the plaintiffs argument that DSS “cannot pursue its claim against Suffolk County as the defendant in this action because the County is not a third party, but is somehow the same as the DSS.” (See id. at 190-191.) After noting that the issue bore “little discussion” (see id. at 190), the court reasoned that “Suffolk County DSS is a division of the state DSS charged with the administration of public assistance in Suffolk County and is provided with reimbursement from the state for expenditures in providing medical assistance to the needy”; whereas “Suffolk County, on the other hand, is sued in this case [in] its capacity as the party responsible for the actions of [police officers] and therefore a third party for these purposes” (see id. at 191). In its affirmance of the district court opinion, the Second Circuit did not expressly address the issue, but noted that it had considered the plaintiffs “remaining contentions and [found] them to be without merit.” (Sullivan v County of Suffolk, 174 F3d at 286.) It should be noted that the central holding of the Second Circuit opinion, which was that a Medicaid benefits recipient had to satisfy a Medicaid lien in its entirety before he establishes a supplemental needs trust for his own benefit, has since been abrogated by Arkansas Dept. of Health & Human Servs. v Ahlborn (547 US 268 [2006]). (See In re Zyprexa Prods. Liab. Litig., 451 F Supp 2d 458, 469 [ED NY 2006].)
More recently, in Smith v Little Flower Children’s Servs. of N.Y. (2005 WL 1890283 [ED NY 2005]), a federal district court rejected the plaintiffs contention that “the City’s status as a defendant should prohibit any lien recovery by DSS” on the grounds that the plaintiff “sued the City, not DSS, for its role in placing him in the custody of unfit guardians and, although DSS is a City agency, it is a distinct entity.” (See id. at *3.) The Eastern District opinion cites only to the district court opinion in Sullivan v County of Suffolk (1 F Supp 2d 186, 190-191 [1998]), and notes that, as in Sullivan, “this very distinction between DSS and the City of New York bars the instant plaintiff from succeeding on the same argument.” (See Smith v Little Flower Children’s Servs. of N.Y., 2005 WL 1890283 at *3.)
*569 Neither Sullivan v County of Suffolk (1 F Supp 2d 186 [ED NY 1998]) nor Smith v Little Flower Children’s Servs. of N.Y. are binding on this court since the issue of the validity and extent of state liens is generally a determination involving state law (see In re Zyprexa Prods. Liab. Litig., 451 F Supp 2d at 477), nor are the opinions particularly persuasive. Both opinions acknowledged that the Department of Social Services was a city or county agency, but, without any citation to authority, and without pointing to any evidence in the record, held in conclusory fashion that DSS was “distinct” from the county or city, respectively, and, therefore, could enforce a lien on proceeds offered by the county or city in settlement of a lawsuit.
Moreover, both Sullivan v County of Suffolk and Smith v Little Flower Children’s Servs. of N.Y. were decided prior to Ahlborn. Prior to Ahlborn, New York state and federal courts adopted a “full reimbursement approach,” requiring that Medicaid liens be paid in full from available settlement proceeds irrespective of the portion of the settlement representing past medical expenses. (See In re Zyprexa Prods. Liab. Litig., 451 F Supp 2d at 469-470.) Under the full-reimbursement approach, DSS had less incentive to be involved in settlement negotiations since it could be assured of full reimbursement of its Medicaid lien as long as the settlement amount exceeded the amount of the lien. (Id.) After Ahlborn, DSS has greater incentive to be involved in the settlement negotiations to ensure that any settlement includes the costs of medical expenses, and to avoid the uncertainty that may arise by an allocation hearing.
In cases where DSS is not involved in the settlement negotiations, and, therefore, it is not clear as to what portion of the settlement represents medical expenses for purposes of satisfying any lien, the court must hold an allocation hearing to determine what portion of the settlement proceeds represent past medical expenses. (See Matter of Homan v County of Cattaraugus Dept. of Social Servs., 74 AD3d at 1755; Chamorro v Cole, 2010 NY Slip Op 32641[U], *4-5 [2010]; Harris v City of New York, 16 Misc 3d at 679-680; Lugo v Beth Israel Med. Ctr., 13 Misc 3d at 688-689.) In that situation, even though the parties have settled the case, they may not know the true amount of the settlement, i.e., how much money the plaintiff will be receiving after satisfaction of the Medicaid lien, until after the allocation hearing, and, therefore, may not have had a true meeting of the minds as to the settlement itself.
It is clearly a preferred practice for the parties to include DSS in any settlement negotiations in lieu of settling a case and then *570 holding an allocation hearing. Indeed, the DSS letter dated June 6, 2011, as well all of the letters included with DSS’s opposition papers as exhibit F and exhibit G, state, “You must contact our office at the time a settlement is being considered so that the Department may provide an updated lien amount and participate in negotiations.” The notice of lien dated February 22, 2011, provides that “it is recommended that responsible third parties itemize in any settlement agreement the full amount of the lien or amended lien as a distinct component of the Recipient’s recovery and that the Department be included as an interested party in settlement negotiations.” Among those “allegedly liable for injuries,” the notice of lien lists “NYC Economic Development Corporation,” and on the same date DSS wrote to the lawyers representing the City and EDC in this action, advising of the lien. Indeed, it is reasonable to assume that the City as the settling party would adhere to policies regarding settlement instituted by DSS, another city agency.
DSS points to no statutory requirement that a Medicaid recipient notify DSS of its intention to settle a claim for personal injury that might implicate the Medicaid lien. Here, both the record of the settlement on April 25, 2011 and the infant compromise order explicitly referred to the possibility of a Medicaid lien, but, for whatever reason, the City did not allocate any portion of the settlement proceeds to past medical expenses.
In circumstances as here, where the City is the settling defendant and where DSS is a city agency, there is no risk that counsel for the City would not include DSS as part of the settlement negotiations in order to deprive DSS of enforcement of its lien. As this court stated, “One would expect . . . that where the City intended to reduce the amount provided to compensate the plaintiff for the injury it caused by the amount of expenses incurred in treating the injury, the City would have expressly qualified its offer.” (See D.C. v City of New York, 2008 NY Slip Op 50037[U] at *4.) Here, the City did not expressly so qualify its offer.
Accordingly, plaintiffs’ motion is granted in accordance with this decision and order to the extent that any settlement proceeds covered by the infant compromise order are determined not to include compensation for past medical expenses to which any Medicaid lien could attach. The court expresses no opinion with respect to any lien on plaintiffs’ settlement with the HanPadron defendants.